**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR NO.: 04-10299-PBS |
| VS. | : | May 11, 2006 |
| ANDRES MARTINEZ | : | |

## MEMORANDUM IN SUPPORT OF SENTENCING

The defendant Andres Martinez is charged in counts one and nine of the superceding indictment. Count one contains two allegations; in the first it is said that he conspired with others to distribute cocaine, and in the second it is said that the conspiracy involved at least five kilograms of cocaine. 21 USC 846.

In count 9 it is alleged that on May 1, 2004 he possessed at least five kilograms of cocaine with the intent to distribute. 21 USC 841 (a) (1).

Section (a) (1) makes it unlawful for any person to knowingly and intentionally manufacture, distribute or dispense, <u>or possess with intent to</u> manufacture, <u>distribute</u> or dispense <u>a controlled substance</u>. The penalties for a violation of 841 (a)(1) are provided for in section (b).

Subsection (b)(1)(A)(ii) provides that in the case of a violation involving 5 kilograms or more of cocaine, such person shall be sentenced to a term of imprisonment which may not be less than 10 years nor more than life. The guideline range for 5 kilograms or more of cocaine runs from level 32 to level 38, resulting in a variation of 121 months and life.

The gradations in the guideline calculations include ranges of 5 to 15 (32), 15 to 50 (34), 50 to 150 (36), 150 or more (38).

A number of cases have developed a rule which holds that Apprendi v. New Jersey, 530 US 466 (2000), only applies when a disputed fact enlarges the applicable statutory maximum. See United States v. Piccolo, 282 F.3d 41 (1st Cir. 2002); United States v. Caba, 241 F.3d 98 (1st Cir. 2001); United States v. La Freniere, 236 F.3d 41 (1st Cir. 2001). Apprendi, was an appeal from a New Jersey conviction where the defendants' sentence, in a firearms possession case, was enhanced because the court found that the defendants firearm possession was related to a hate crime. The Supreme Court decided that the Due Process Clause of the Fourteenth Amendment required the state to submit the hate crime element to a jury for its consideration.

In deciding that it must, the court said:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones, other than the fact of a prior conviction (as in Almendarez-Torres) any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

The phrase "beyond the prescribed statutory maximum" in that passage has been extracted and thereafter employed to limit Apprendi's other admonitions that:

> It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.

And

> Our answer to that question was foreshadowed by our opinion in Jones v. United States, 526 US 227 (1999), construing a federal statute. We there noted that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment submitted to a jury and proven beyond a reasonable doubt.

2

The rights, insured by the 5th, 6th and 14th Amendments to the Constitution indisputably entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged beyond a reasonable doubt. Apprendi v. New Jersey, supra; United States v. Gaudin, 515 US 506 (1995); Sullivan v. Louisiana, 508 US 275 (1993); In re Winship, 397 US 358 (1970). The right to a trial by jury and its attendant protections are not procedural formalities, but establish a fundamental reservation of power in our constitutional structure. Blakely v. Washington, 542 US 296 (2004); Ring v. Arizona, 536 US 584 (2002). Thus, much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury and either be proven beyond a reasonable doubt or be admitted by the defendant during the plea colloquy. e.g. United States v. Gaudin, 514 US 506 (1995); Hamling v. United States, 418 US 87(1974); Russell v. United States, 369 US 749 (1962); United States v. Penagaricano-Soler, 911 F.2d 833 (1st Cir. 1991); United States v. Serino, 835 F.2d 924 (1st Cir. 1987). An indictment is legally sufficient if it contains the elements of the offense charged, fairly informs a person of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of a prosecution for the same offence. United States v. Hogan, 862 F.2d 386 (1st Cir. 1988); United States v. Fusaro, 708 F.2d 17 (1st Cir. 1983); United States v. Holmes, 632 F.2d 167 (1st Cir. 1980).

In McMillan v. Pennsylvania, 477 US 79 (1986), the Court decided that there is a distinction between the elements of an offense and sentencing factors, and in that case concluded that person's convicted of certain felonies could be subjected to a mandatory minimum, when the judge found by a preponderance of the evidence that the defendant

3

"visibly possessed a firearm" during the commission of the offense. McMillan, 477 US at 81.

McMillan, however, was decided in an atmosphere where it was clear that the legislature had specifically made the "firearm possession" a sentencing factor. Accord Staples v. United States, 511 US 600 (1994); Liparota v. United States, 471 US 419 (1985); United States v. Majica-Baez, 229 F.3d 292 (1st Cir. 2000).

The Supreme Court has also taken a different stance where it has concluded that the legislative intent clearly envisioned that certain facts established a separate offense. See Castillo v. United States, 530 US 120 (2000). In that case the court held that 924 c's higher penalty for possession of a machine-gun during a drug trafficking offense, operated to create a separate substantive crime, notwithstanding the fact that the machinegun provision was found under the penalty clause. Thus, the fact that subsection (b) of 841 is entitled "penalty" is of no moment. And like Castillo, the penalty section in 841 (b) not only provides for steeply higher penalties, but conditions them on the finding of further facts relating to quantity. That makes quantity as important as the other elements of section 841 (a). The look of the statute is not a reliable guide to congressional intention, Jones, supra, nor is the fact that all circuits have interpreted the structural differences in the statute, to create three categories of crime, conclusive. The issue should turn on the Constitutional issue recognized by Winship and honored by Jones and Apprendi.

The court can also determine congressional intent by considering the impact of its other enactments. In this instance, the adoption of a guideline regime reflects a recognition that guilt of higher quantities of an illicit drug would warrant a higher

4

penalty. In fact, in the consortium of factors which influence sentence nothing could be more important than the determination of quantity. Why, one would ask, should the most important fact be taken from the jury's consideration and be given to a judge who would only apply a preponderance standard.

The federal sentencing guidelines have the force of law and bind judges and courts in the exercise of their responsibility to pass sentence in a criminal case. United States v. Stinson, 508 US 36 (1993); United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005).

They constitute an overlay of binding law that United States v. Booker, 543 US 220 (2005), held makes the guideline system advisory while maintaining a strong connection between the sentence imposed and the offenders real conduct. Because the guidelines still bind the sentencing court, to consult them, the maximum sentence justifiable under the guidelines must be the maximum sentence to which a defendant may be exposed and sentenced and not the maximum sentence authorized by the statute. This becomes obvious from a reading of Justice Stevens concluding statement in Part I of the Courts opinion in Booker:

> Accordingly we reaffirm our holding in Apprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

The limitation is "the maximum authorized by the facts" and not the maximum authorized by the statute. If the court had meant the statutory maximum it would have said so. In fact, the court in Blakely, specifically said that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of

5

the facts reflected in the jury verdict or admitted by the defendant." This could only be construed to mean the maximum authorized by statute if it were permissible for the court to ignore the guideline maximums.

In <u>Almendarez-Torres v. United States</u>, 523 US 224 (1998) the court discussed at length the difference between elements of a crime and sentencing factors. Among the considerations the Court relied on was the question of whether the fact related to the commission of the offense rather than to the punishment. (Citing <u>United States v. Jackson</u>, 824 F.2d 21 (CADC1987) (opinion of R. Ginsburg J) (wherein the court noted that few, if any federal statutes make prior convictions an element of another offense to be proved to a jury.) <u>Almendarez-Torres</u> clearly stands for the proposition that its increased penalty provisions were designed to combat recidivism and recidivism was not an element of the offense.

<u>Almendarez v. Torres</u> does not preclude the standard of proof claim addressed in <u>Blakely</u> and <u>Booker</u> because as the court noted he had admitted his recidivism at the time he entered his plea of guilty, and the court expressly said it would not decide whether a heightened standard of proof might apply to a sentencing determination that bore significantly on the severity of the sentence, where it was not raised. CF. <u>United States v. Watts</u>, 519 US 148 (1997) (per curian).

Mr. Justice Scalia who dissented in <u>Almendarez-Torres</u> chronicled the history of precedents beginning with <u>In re WInship</u>, 397 US 358 (1970) where the Supreme Court had invalidated a statute which reduced the burden of proof. Moreover, his dissent made it plain that in his view the Constitution required the government to prove any fact which increased the maximum penalty to which a criminal defendant would be subject to,

6

beyond a reasonable doubt. In <u>Blakely</u>, Justice Scalia wrote for the majority, and he again repeated the comment that the maximum sentence a judge may impose is one which is based on facts which are reflected in a jury's verdict.

<u>Booker's</u> part II holding detailed the effect of the increasing emphasis that factual findings were having on the enhancement of sentencing rages, and it concluded by saying that as the enhancements because greater the jury's finding's of the underling crime became less significant. This, according to the Court violated tradition and threatened the right to trial by a jury.

<u>Booker</u>, also addressed the fact finding issue as it related to a penalty "for a crime beyond the prescribed statutory limit." It specifically said that that had been the issue in <u>Apprendi</u>, because they had been considering a statute and not the guidelines. The court then said, that more important than the language used in <u>Apprendi</u>, were the principles that the court sought to vindicate. Namely, the right of the people to be free from the judicial despotism that could arise from arbitrary punishment based upon arbitrary convictions arrived at without the benefit of a jury in criminal cases.

<u>Blakely</u> and <u>Booker</u> have plainly broadened <u>Apprendi's</u> rule. In these two cases, the court looked beyond the narrow issue in <u>Apprendi</u> involving the statute and shifted its concern to judicial fact-finding that increases a sentence because of particulars facts.

For all of these reasons the defendant may not receive an unadjusted sentence above level 32.

As a second part of his <u>Blakely</u>-<u>Booker</u> argument, the defendant, contends that he may not be adjudged an organizer leader, supervisor, or manager under 3B1.1 of the sentencing guidelines. This effort, like the weight determination, was neither charged nor

submitted to a jury for its finding. But even more importantly this aggravating role is an additional element concerning the defendants role in the charged crime. It, like drug weight has enormous consequences on the defendants sentence and could increase it as much as 114 months, without the intervention of a jury finding. For the same reasons urged in part I of this argument, the court should not permit any hearing to determine whether the defendant played an aggravating role in the conspiracy.

In Jones, the Supreme Court noted that its decision in McMillan v. Pennsylvania, 477 US 79 (1986) was notable not only for acknowledging the question of the due process requirements for fact finding that raises a sentencing range, but also for disposing of a claim that Pennsylvania law violated the Sixth Amendment right to a jury trial as well. In that case the petitioner had argued for a right to a jury determination of all the ultimate facts concerning the offense committed. Similarly, Andres Martinez contends not only must he be the subject of an accusation, in this case that he was a leader, but there must also be a jury determination on the issue.

Jones, rejected the notion that the state, or as in this case the government, can manipulate its way out of Winship, and from Patterson v. New York's, 432 US 215 (1997), recognition of a limit on the governments authority to reallocate traditional burdens of proof.

If the leadership role was merely a sentencing issue which could raise a defendants imprisonment for up to 114 months, the jury's function would "shrink" and thereby be reduced to some low level gate keeping function. Indeed the history of jury trials in this country is replete with exhibitions of the jury's assertion of a mitigating power which serves as a check on the governments abuse of the criminal process and as

8

Jones recounted, "this power to thwart Parliament and the Crown took the form, not only of flat out acquittals in the face of guilt but of what today we would call verdicts of guilty to lesser included offenses." Id.

Even Almendarez-Torres, does not stand for the proposition that every fact expanding a penalty range need not be laid in the indictment. It simply holds that Congress, in that case, was free to set recidivism as a sentencing factor. That court and others have established that "recidivism" has a distinctive significance, which is distinguishable for constitutional purposes, from other facts that might extend the range of possible sentences. Id 230; Jones, at 249. It has, as the court noted, "a very long tradition in this county that dates back to colonial times" and as a consequence the Supreme Court said long ago that the government need not allege a defendants prior conviction in the indictment that alleges the elements of an underlying crime, even though the conviction was necessary to bring the case within the statute. Graham v. West Virginia, 224 US 616 (1912). Recidivism thus has a unique place in the law, which is far different than the factual question of a defendants role in the offense.

The court should not permit any hearing to determine whether the defendant played an aggravating role in the conspiracy.

### 5K2.0 DOWNWARD DEPARTURE

The defendant is entitled to a downward departure under 5k2.0 because of the death of his mother and son while he has been imprisoned. The defendant also believes that he is entitled to a downward departure because he has agreed to immediate deportation and the fast track provisions are not available to him. 5K2.0 permits a downward departure where circumstances exist which are not adequately taken into

9

account by the Sentencing Commission, and where circumstances are present in an unusual degree. 5K2.0 (a) (3).

The loss of his mother and that of his son have had a devastating effect upon the defendant. He has been helpless to both his wife and his grandson during these trying times. The loss has affected him both physically and emotionally, leaving him at all times with a sense of hopelessness. He has not been able to secure either the medical or spiritual help that he needs to restore his life to normalicy. His pre trial detention has worked pain on him that has greatly increased the measure of the punishment that has been imposed. This can all be confirmed when the report of Jane Carlton is made available.

Koon v. United States, 518 US 81 (1996) held that if a factor is not expressly forbidden it may, at least in an exceptional case serve as a basis for a departure. The only departure factors entirely forbidden by the guidelines are race, sex national origin, creed, religion and social and economic status. United States v. Alina Perez, 160 F.3d 87 (1st Cir. 1998).

In United States v. Sklar, 920 F.2d 107 (1st Cir. 1990) the court said that a defendants drug rehabilitation could be taken into account as a factor warranting a downward departure. And in United States v. Grandmaison, 74 F.3d 555 (1st Cir. 1996) the court approved a downward departure based on aberrant behavior.

In United States v. Rivera, 994 F.2d 942 (1st Cir. 1993) the court made it clear that the ground for departure must be unusual and must be one which the sentencing commission did not adequately take into consideration.

These cases all recognize the wisdom and even the necessity of sentencing procedures that take into account individual circumstances. <u>Koon</u>, pg. 92. In doing so, courts are authorized to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Sentencing Commission.

In general sentencing courts are to regard each guideline as carving out a heartland, a set of typical cases embodying the conduct each guideline describes. <u>United States v. Grandmaison</u>, supra; Guideline manual Ch 1, Pt. A Introduction Comment 4 (b). <u>United States v. Jackson</u>, 30 F.3d 199 (1st Cir. Cir. 1994). Departures, therefore, are to be the exception rather than the rule. <u>Jackson</u>, at 201; <u>United States v. De Costa</u>, 37 F.3d 5 (1st Cir. 1994). The court, however, has the power to depart downwardly in unusual cases where family circumstances are out of the ordinary. <u>United States v. Rivera-Maldonado</u>, 194 F.3d 224 (1st Cir. 1999); see also <u>United States v. Gaskill</u>, 991 F.2d 82 (3d Cir. 1993); <u>United States v. Johnson</u>, 964 F.2d 124 (2d Cir. 1992); <u>United States Alba</u>, 933 F.2d 1117 (2d Cir. 1991); <u>United States v. Pena</u>, 930 F.2d 1486 (10th Cir. 1991). The death of both mother and son and the need to care for a grandson are sufficiently atypical to distinguish this case from the minerun of cases like the offense of conviction.

This Circuit has adopted the approach taken by the Ninth and Tenth Circuits which eschewed any focus on spontaneity and thoughtfulness, opting instead for a broad view of aberrant behavior. <u>United States v. Grandmaison</u>, 77 F.3d 555 (1st Cir. 1996). This approach calls for the court to employ a totality of circumstance test in making aberrant behavior determinations. In the analysis the court may consider a variety of mitigating factors such as pecuniary gain to the defendant, prior good deeds and an effort

11

to mitigate the effects of the crime, in evaluating whether a defendants conduct was unusual or, more specifically aberrant.  Id; <u>United States v. Takai</u>, 941 F.2d 738 (9th Cir. 1991); <u>United States v. Pena</u>, 930 F.2d 1486 ((10th Cir. 1991).

The defendant in the case has been a law abiding citizen of Mexico his entire life.  The conduct in this case is aberrant, as the letters which have been submitted on his behalf establish.  He is willing to submit to deportation so that he can return to Mexico and live out the remainder of his life with his wife.  These extraordinary circumstances including the unavailability of a fast track reward for his willingness to submit to deportation are all facts which the court should take into account in determining his sentence.

/s/ John F. Cicilline, Esquire #0433
Attorney for (Andres Martinez)
Cicilline Law Office
381 Atwells Avenue
Providence, RI 02909
Office 401 273.5600
Fax 401 454.5600
jfcicilline387@aol.com

### CERTIFICATION

I, the undersigned, hereby certify that I cause to be deliver a true copy of the within to **Denise Rivera**, U.S. Probation Officer, US Probation Office, John Joseph Moakley, United States Courthouse, 1 Courthouse Way, Suite 9200, Boston Ma, 02210 and to **Neil Gallagher, AUSA**, U.S. Attorneys Office, John Joseph Moakley, United States Courthouse, 1 Courthouse Way, Boston Ma, 02210 on this the **11th** day of May, 2006.

RAQUEL GIL